IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:22-cv-00204-CNS-MEH

MICHAEL LEHMANN,

      Plaintiff,

v.

SAMANTHA ZEHNER,

      Defendant.

---

ORDER

---

Before the Court is Defendant Officer Samantha Zehner's Motion to Dismiss (ECF No. 5) Plaintiff Michael Lehmann's Complaint (ECF No. 1). For the following reasons, Ms. Zehner's Motion is DENIED.

## I. BACKGROUND[1]

Prior to November 2019, Mr. Lehmann was in a romantic relationship and lived with Ms. Kayla Vanwatermuelen (ECF No. 1 at 3 ¶ 9). On November 3, 2019, Mr. Lehmann called the police after Ms. Vanwatermuelen physically assaulted him (*Id.* at ¶ 10). Ms. Vanwatermuelen was subsequently arrested, after which the state court in Jefferson County, Colorado issued a mandatory protection order that identified Mr. Lehmann as the protected party from Ms.

---

[1] The background facts are taken from the well-pleaded allegations in Mr. Lehmann's Complaint. *See, e.g.*, *Porter v. Ford Motor Co.*, 917 F.3d 1246, 1247 n.1 (10th Cir. 2019).

Vanwatermuelen (*Id.* at 4 ¶ 12). The protection order permitted Ms. Vanwatermuelen to live at their residence only if Mr. Lehmann was not there (*Id.* at 4 ¶ 13).

Mr. Lehmann arrived at the residence on November 16, 2019, and found Ms. Vanwatermuelen there with Kyle Ellison (*See id.* at 4 ¶¶ 14, 17-18). Mr. Lehmann entered the home "holding a metal pipe loosely at his left side" (*Id.* at ¶ 16). Mr. Lehmann asked Ms. Vanwatermuelen why she was there (*Id.* at ¶ 19). He told Ms. Vanwatermuelen and Mr. Ellison, "if I catch you here [again], you're dead" (*Id.* at 4-5 ¶ 21). Mr. Lehmann kept the metal pipe at his side during this interaction and did not otherwise threaten Ms. Vanwatermuelen or Mr. Ellison with the pipe (*Id.* at 5 ¶¶ 22-24). Ms. Vanwatermuelen walked past Mr. Lehmann throughout this interaction, gathering items from the residence (*Id.* at 6 ¶ 30). Eventually Mr. Ellison noticed Mr. Lehmann's metal pipe and asked him to put it down (*Id.* at ¶ 32). Mr. Lehmann put down the pipe (*Id.* at ¶ 34) Mr. Lehmann then told Ms. Vanwatermuelen he did not intend to call the police to inform them that she was violating the terms of the protective order (*Id.* at 7 ¶ 38). She responded negatively (*Id.* at ¶ 39).

On December 5, 2019, Mr. Lehmann entered the residence and again found Ms. Vanwatermuelen there (*Id*. at 8 ¶ 48). He requested a civil assist to enforce the protection order, to which Officer Zehner responded (*Id.* at ¶ 49-51). At that time, Ms. Vanwatermuelen complained to Officer Zehner about her November 16, 2019 incident with Mr. Lehmann, asserting that Mr. Lehmann had threatened her with the metal pipe (*Id.* at ¶ 54). Officer Zehner reviewed cell phone footage of the incident, conducted follow-up interviews, and issued an arrest warrant for Mr. Lehmann, charging him with two counts of felony menacing under Colorado law (*Id.* at 9 ¶¶ 57,

60-62). He was arrested on January 29, 2020 (*Id.* at 10 ¶ 65). On October 14, 2020, the District Attorney filed a motion to dismiss, which the state court granted (*Id.* at ¶ 66).

Mr. Lehmann filed this action in federal court in January 2022, alleging Officer Zehner violated 42 U.S.C. § 1983 by unlawfully arresting and maliciously prosecuting him (*See generally* ECF No. 1). Officer Zehner filed the instant Motion to Dismiss in April 2022, contending that she is entitled to qualified immunity on both claims (ECF No. 5 at 2). Mr. Lehmann timely filed his Response (ECF No. 9), and Officer Zehman timely filed her Reply (ECF No. 11).[2]

## II. LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must allege facts, accepted as true and interpreted in the light most favorable to the plaintiff, to state a claim to relief that is plausible on its face. *See, e.g.*, *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016). A plausible claim is one that allows the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then a plaintiff has failed to "nudge [the] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quotation omitted). In assessing a claim's plausibility, "legal conclusions" contained in the complaint are not entitled to the assumption of truth. *See Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). The standard, however, remains a liberal pleading standard, and "a well-pleaded

---

[2] Officer Zehner also filed a Motion to Stay Discovery pending resolution of the Motion to Dismiss in June 2022 (ECF No. 17), which the Magistrate Judge granted (ECF No. 27). Pursuant to the Magistrate Judge's Order, discovery has been stayed in this case pending resolution of Officer Zehner's Motion to Dismiss (*See id.*).

complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quotation omitted).

When a defendant asserts qualified immunity, the plaintiff must show that the defendant (1) violated a statutory or constitutional right and (2) the right was "clearly established" at the time of the defendant's challenged conduct. *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019) (quotation omitted). The Court may address either prong first. *Panagoulakos v. Yazzie*, 741 F.3d 1126, 1129 (10th Cir. 2013). For the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision "on point," or the "weight of authority from other courts must have found the law to be as the plaintiff maintains." *Halley v. Huckaby*, 902 F.3d 1136, 1149 (10th Cir. 2018) (quotation omitted). A plaintiff is not required to cite a case with "identical facts" to demonstrate a clearly established right, *Kapinski v. City of Albuquerque*, 964 F.3d 900, 910 (10th Cir. 2020), but clearly established law must place the constitutional issue "beyond debate," *Mullenix v. Luna*, 577 U.S. 7, 16 (2015) (quotation omitted). In its analysis of a defendant's motion to dismiss, courts consider whether a complaint's well-pleaded factual allegations and related inferences allege an officer violated a clearly established constitutional right. *See Sanchez v. Hartley*, 810 F.3d 750, 754 (10th Cir. 2016) (citation omitted).

### III. ANALYSIS

Having reviewed the Complaint, Officer Zehner's Motion to Dismiss, the related briefing, and relevant legal authority, the Court denies Officer Zehner's Motion to Dismiss.

### A. Unlawful Arrest

Officer Zehner contends dismissal of Mr. Lehmann's unlawful arrest claim under § 1983 is warranted because she is entitled to qualified immunity, given that probable cause supported his arrest (ECF No. 5 at 8). Mr. Lehmann argues that Officer Zehner lacked probable cause to arrest him, and therefore she is not entitled to qualified immunity (ECF No. 9 at 7). For the reasons set forth below, the Court agrees with Mr. Lehmann.

#### 1. Constitutional Violation

The Court first determines whether Mr. Lehmann has met his burden of alleging Officer Zehner violated a constitutional right. *See Cummings*, 913 F.3d at 1239. Mr. Lehmann argues that Officer Zehner disregarded the cell phone footage in her arrest affidavit (*See, e.g.,* ECF Nos. 1 at 11 ¶ 75, 9 at 11). This, Mr. Lehmann contends, amounts to a violation of his constitutional rights under the Fourth Amendment (*See* ECF No. 9 at 7). The gravamen of Officer Zehner's argument is that the existence of probable cause to arrest Mr. Lehmann "removes any notion" of an underlying constitutional violation (ECF No. 5 at 10).

Where an unlawful arrest claim involves an allegedly deficient arrest affidavit, the affidavit violates the plaintiff's constitutional rights where the affiant "knowingly, or with reckless disregard for the truth" includes "material false statements" in the arrest affidavit. *Metzler v. City of Colorado Springs*, 841 F. App'x 94, 98 (10th Cir. 2021) (citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978)).[3] Courts may infer recklessness from circumstances that demonstrate "obvious

---

[3] This is commonly known as a *Franks* claim or *Franks* violation. In its unlawful arrest jurisprudence, the Tenth Circuit has distinguished the legal framework applied to unlawful arrest claims that arise from warrantless arrests, *see, e.g.*, *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012), and the *Franks* framework that applies to unlawful arrests based on allegedly deficient arrest warrants, *see, e.g., Metzler*, 841 F. App'x at 98. The parties cite to both lines of cases without distinction in their briefs (*See* ECF Nos. 5 at 9; 9 at 7, 13). Understandably so—the Tenth Circuit has also applied the *Franks* line of cases to Fourth Amendment claims in cases that did not concern allegedly deficient

reasons to doubt the veracity of the [affidavit's] allegations." *Kapinski*, 964 F.3d at 908 (quotation omitted).

Officer Zehner contends the following allegations supported probable cause to arrest Mr. Lehmann for his behavior on November 16, 2019: his carrying of the metal pipe; Mr. Lehmann's statement that if he caught Ms. Vanwatermuelen or Mr. Ellison at the residence they were "dead"; and that Mr. Lehmann's threats were made while holding the metal pipe (ECF No. 5 at 11-12). Officer Zehner further argues that during the interaction, Ms. Vanwatermuelen and Mr. Ellison stated they feared for their lives (ECF No. 11; *see also* ECF No. 5-1 at 1-2).[4] Accordingly, Officer Zehner argues, there was nothing false in her arrest affidavit that undermines the probable cause determination (*Id.* at 12).

However, the Court agrees with Mr. Lehmann that the notion that these allegations support probable cause, and her statements in the arrest affidavit (*See* ECF No. 5-1 at 1-2), are undermined by the cell phone footage Officer Zehner reviewed and cited in her affidavit (*See* ECF No. 9 at 8).

---

warrants. *See Stonecipher v. Valles*, 759 F.3d 1134, 1142 (10th Cir. 2014). And recently the Tenth Circuit acknowledged, in a case concerning alleged factual omissions in a warrant, the different standards it has applied in evaluating whether law was "clearly established" in unlawful arrest cases. *See Kapinski*, 964 F.3d at 909 n.6 (considering the "clearly established" prong of qualified immunity in unlawful arrest case based on deficient warrant and noting "[s]ometimes we assess this prong . . . by asking whether there was 'arguable probable cause'" (quoting *Stonecipher*, 759 F.3d at 1141)). The Court notes the state of this jurisprudence, but—given the nature of Mr. Lehmann's allegations—applies the *Franks* line of cases in analyzing the first qualified immunity prong.

[4] The Court agrees with Officer Zehner that it may consider the arrest affidavit and cell phone footage in ruling on Officer Zehner's Motion to Dismiss (ECF Nos. 5 at 3 n.2). Mr. Lehmann includes a screenshot from the cell phone footage in his Complaint, and references the arrest affidavit throughout the Complaint (*See* ECF No. 1 at 6, 10-11). Mr. Lehmann does not oppose Officer Zehner's request that the Court take judicial notice of these materials or dispute the materials' authenticity (ECF No. 9 at 5). For these reasons judicial notice of the arrest affidavit and cell phone footage at the motion to dismiss stage is appropriate. *See, e.g.*, *N.E.L. v. Gildner*, 780 F. App'x 567, 571 (10th Cir. 2019); *see also Watkins v. Douglas Cnty.*, No. 20-CV-01172-RM-MEH, 2020 WL 8408482, at *8 (D. Colo. Sept. 15, 2020), *report and recommendation adopted*, No. 20-CV-01172-RM-MEH, 2021 WL 100117 (D. Colo. Jan. 12, 2021) (considering body cam footage at the motion to dismiss stage where portion of footage was incorporated by reference into complaint and the plaintiff did not dispute the video's authenticity).

The footage shows Mr. Lehmann leaning against a wall in the residence. Although Mr. Lehmann made one comment that if he catches Ms. Vanwatermuelen at the residence again she is "dead," he made no movements that a reasonable officer could have believed placed either Ms. Vanwatermuelen or Mr. Ellison in fear of imminent serious bodily injury (ECF No. 9 at 8). *See also Stonecipher*, 759 F.3d at 1142. Nor does the cell phone footage show Mr. Lehmann using the metal pipe as a weapon or threatening to use the metal pipe as a weapon (*Cf.* C.R.S. § 18-3-206(1)).[5] And, as Mr. Lehmann argues, Ms. Vanwatermuelen repeatedly walked past Mr. Lehmann while gathering her belongings, further illustrating that she did not believe herself to be in any danger or threat of immediate harm (*See* ECF No. 9 at 9). For these reasons the cell phone footage provides "obvious reasons" to doubt the allegations contained in Officer Zehner's arrest affidavit. *Kapinski,* 964 F.3d at 908 (quotation omitted); *see also DeLoach v. Bevers*, 922 F.2d 618, 622 (10th Cir. 1990) (concluding evidence existed from which a jury could conclude detective made "reckless misstatements" in affidavit where evidence contradicted the statements and other evidence demonstrated affidavit statements were "exaggeration[s]").

Mr. Lehmann persuasively argues other allegations support the conclusion that Officer Zehner violated his constitutional right (*See* ECF No. 9 at 10). For instance, Ms. Vanwatermuelen is alleged to have previously assaulted Mr. Lehmann, and Officer Zehner knew she was the subject of a protective order and was in violation of the protective order during the alleged incident (ECF

---

[5] Officer Zehner ironically criticizes Mr. Lehmann for discussing the elements of Colorado's felony menacing statute in determining whether Officer Zehner had probable cause to arrest him for felony menacing under Colorado law (ECF No. 11 at 2-3). Officer Zehner cites the felony menacing statute in her own brief when arguing that probable cause supported Mr. Lehmann's arrest (ECF No. 5 at 13). Moreover, the Tenth Circuit has looked to state law in determining whether probable cause existed to support an arrest's lawfulness. *See Fogarty*, 523 F.3d at 1156. Although *Fogarty* was decided in the context of a warrantless arrest, *see id.* at 1152, the Court finds *Fogarty*'s emphasis on what crime officers "could objectively and reasonably" believe the plaintiff committed instructive in the context of Mr. Lehmann's case, *see id.* at 1156.

Nos. 9 at 10; 5-1 at 1; 1 at 3, 8 ¶¶ 10, 50-51). These allegations, according to Mr. Lehmann, made it "unreasonable" for Officer Zehner to "give credence" to Ms. Vanwatermuelen and Mr. Ellison's statements regarding the November 16, 2019 incident (ECF No. 9 at 11). These circumstances offer additional reasons to doubt the veracity of the arrest affidavit's statements. *See Kapinski*, 964 F.3d at 908.

Officer Zehner argues she may nonetheless be shielded by qualified immunity if, after any false statements are removed from the arrest affidavit, the remaining statements in the affidavit support a finding of probable cause (*See* ECF No. 5 at 10-12). In the arrest affidavit, Officer Zehner stated that she reviewed the cell phone footage and she spoke to Ms. Vanwatermuelen and Mr. Ellison about the incident (ECF No. 5-1 at 1-2). In reviewing the latter, Ms. Vanwatermuelen and Mr. Ellison told Officer Zehner that they felt threatened by Mr. Lehmann (*Id.*). However, for the reasons set forth above, the remaining statements in the arrest affidavit provide additional reasons to infer recklessness—they are insufficient to demonstrate a reasonable officer would have found probable cause to arrest Mr. Lehmann for felony menacing under the circumstances. *See Stonecipher*, 759 F.3d at 1134.

At bottom, the cell phone footage was central to Officer Zehner's probable cause determination (*See* ECF No. 5-1 at 1-2). Officer Zehner's interviews with Ms. Vanwatermuelen and Mr. Ellison concerned "what happened" in the video (*Id.* at 1). As Mr. Lehmann argues, this objective footage clearly contradicted Ms. Vanwatermuelen and Mr. Ellison's story and "cast [their] assertions "into doubt" (ECF No. 9 at 11). The Court agrees. The video footage provides "obvious reasons to doubt" the veracity of the allegations contained in the arrest affidavit. *Metzler*,

841 F. App'x at 98 (quotation omitted).[6] Accordingly, Mr. Lehmann has met his burden of alleging that Officer Zehner violated his constitutional rights.[7]

### 2. Clearly Established

The Court must next address whether Mr. Lehmann's constitutional right was "clearly established" at the time of the alleged violation. *See Panagoulakos*, 741 F.3d at 1129. Mr. Lehmann argues that Tenth Circuit law clearly established police officers cannot rely on witness testimony in arrest affidavits when video evidence contradicts that testimony (ECF No. 9 at 12). Officer Zehner argues Tenth Circuit law does not support Mr. Lehman's unlawful arrest claim because, unlike other cases, in this case probable cause supported his arrest (*See* ECF No. 11 at 6). The Court agrees with Mr. Lehmann.

Mr. Lehmann has met his burden under the "clearly established" prong. As Ms. Lehmann correctly argues, the law "was and is unambiguous:" Government officials must have probable cause to arrest an individual (ECF No. 9 at 7). *See also Fogarty*, 523 F.3d at 1159. More specifically, Mr. Lehmann argues that the Tenth Circuit's decision in *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252 (10th Cir. 1998), demonstrates that Officer Zehner violated clearly established law

---

[6] Under *Franks*, Mr. Lehmann must also show that the disputed information is material. *See Kapinski*, 964 F.3d at 905. Mr. Lehmann argues that the cell phone footage shows "several key elements" for felony menacing "are missing from the factual circumstances" (ECF No. 9 at 8). For substantially the same reasons that Mr. Lehmann has met his burden of satisfying *Frank*'s "recklessness" requirement, he has also shown the cell phone footage is material. *See id.* (explaining material information is information that would change the probable cause determination).

[7] The Tenth Circuit has distinguished facial challenges to affidavits' probable cause determination and *Franks* challenges to affidavits. *See Beard v. City of Northglenn, Colo.*, 24 F.3d 110, 114 (10th Cir. 1994). Mr. Lehmann does not appear to make a facial challenge to Officer Zehner's arrest affidavit (*See, e.g.*, ECF No. 9 at 8-12). However, even if the Court construes Mr. Lehmann's arguments as a facial challenge, or applies the probable cause framework for warrantless arrests, *see, e.g., Kaufman*, 697 F.3d at 1300, Mr. Lehmann has adequately alleged that Officer Zehner lacked probable cause to arrest Mr. Lehmann for felony menacing. Considering the cell phone footage and the Complaint's well-pleaded allegations, *see Sanchez*, 810 F.3d at 754, and for the reasons set forth above, Mr. Lehmann has met his burden of showing a "substantial probability" that he committed felony menacing did not exist, *see Stonecipher*, 759 F.3d at 1141 (quotation omitted).

9

when she ignored the cell phone footage and credited the statements of Ms. Vanwatermuelen and Mr. Ellison in the arrest affidavit (ECF No. 9 at 10). In *Baptiste*, two police officers relied on security guards' testimony to establish probable cause that the plaintiff had shoplifted. *See id.* at 1256-57. The Tenth Circuit held that reliance on the guards' testimony was insufficient to establish probable cause to arrest the plaintiff because videotape evidence depicting events regarding the alleged shoplifting were insufficient to establish probable cause. *Id.* at 1257. Because the guards' allegations were "based solely on the conduct of [the plaintiff] which was memorialized in its entirety" on the videotape and the officers viewed "the very same conduct" on the video tape, the Tenth Circuit concluded it was "not reasonable" for the officers to rely on the officers' allegations. *Id.* At bottom, "[o]fficers may not rely solely on . . . allegations when the officers have before them an exact replication of all the information on which the . . . allegations are based." *Id.* (citation omitted).

Officer Zehner argues that *Baptiste* is distinguishable because it did not concern obtaining an arrest warrant through an affidavit (ECF No. 11 at 6). This is correct. However, Mr. Lehmann is not required to cite a case with "identical facts" to demonstrate a clearly established right. *Kapinski*, 964 F.3d at 910. And Mr. Lehmann has not, in citing *Baptiste*, placed the right at an impermissibly "high level of generality," *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011), nor does *Baptiste* merely "suggest[]" the right Mr. Lehmann identifies, *City of Tahlequah, Oklahoma v. Bond*, 142 S. Ct. 9, 11 (2021). Instead, the Court concludes Mr. Lehmann has met his burden of showing *Baptiste* makes the contours of the right "sufficiently clear," *see Kapinski*, 964 F.3d at 909, and places the constitutional question "beyond debate," *Mullenix*, 577 U.S. at 16 (quotation omitted).

\* \* \*

For the reasons set forth above, Mr. Lehmann has met his burden of alleging that Officer Zehner violated his clearly established constitutional right. Accordingly, at this stage Officer Zehner is not entitled to qualified immunity on Mr. Lehmann's unlawful arrest claim.

## A. Malicious Prosecution

Officer Zehner contends that dismissal of Mr. Lehmann's malicious prosecution claim under § 1983 is warranted, given that probable cause supported Mr. Lehmann's arrest and Mr. Lehmann failed to allege Officer Zehner acted with malice (ECF No. 5 at 14-16).[8] Mr. Lehmann argues that he has adequately alleged all elements of his malicious prosecution claim (*See* ECF No. 9 at 13). The Court agrees with Mr. Lehmann.

To set forth a § 1983 malicious prosecution claim, a plaintiff must allege: (1) the defendant caused plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest; (4) the defendant acted with malice; and (5) the plaintiff sustained damages. *See Sanchez*, 810 F.3d at 754 n.1. The "favorable termination" element only requires a plaintiff to show that their criminal prosecution "ended without a conviction." *Thompson*, 142 S. Ct. at 1341. The parties do not dispute the first and fifth elements of Mr. Lehmann's malicious prosecution claim (ECF Nos. 9 at 13, 11 at 7 n.3). The Court considers Officer Zehner's arguments regarding the remaining elements in turn.

---

[8] In her Motion to Dismiss, Officer Zehner also argued that Mr. Lehmann failed to allege that his criminal matter terminated in his favor (ECF No. 5 at 14). In her Reply (ECF No. 11 at 7 n.3), Officer Zehman acknowledged the Supreme Court's recent decision in *Thompson v. Clark*, 142 S. Ct. 1332 (2002), in which the Supreme Court held that § 1983 malicious prosecution claims do not require showing "the criminal prosecution ended with some affirmative indication of innocence," *id.* at 1341.

Regarding the second, "favorable termination" element, Officer Zehner acknowledges the Supreme Court's recent decision in *Thompson v. Clark* (ECF No. 5 at 14). As Mr. Lehmann argues, he alleges that the District Attorney dismissed his case on October 14, 2020 (ECF Nos. 1 at 10 ¶, 9 at 14-15). Accordingly, he has satisfied the second element of his malicious prosecution claim. *See Thompson*, 142 S. Ct. at 1341.

Regarding the third, "probable cause" element, Officer Zehner argues that probable cause existed to arrest Mr. Lehmann (*See* ECF No. 5 at 15). Mr. Lehmann contends that, for the same reasons discussed above, Officer Zehner lacked probable cause to arrest him (*See* ECF no. 9 at 15). The Court agrees with Mr. Lehmann. As the Court discussed in its analysis of his unlawful arrest claim, Mr. Lehmann has alleged that no probable cause supported his original arrest. *See Sanchez*, 810 F.3d at 754 n.1.

Regarding the fourth, "malice" element, Officer Zehner argues that Mr. Lehmann offers one conclusory allegation regarding her malice, which is insufficient to make out this element of his malicious prosecution claim (ECF No. 5 at 16). Mr. Lehmann contends that because he alleges Officer Zehner recklessly disregarded the truth in her arrest affidavit, he has adequately pleaded that she acted with the requisite malice (*See* ECF No. 9 at 18-20). The Court agrees with Mr. Lehmann.

In the context of malicious prosecution claims, "malice" may be inferred if a defendant causes prosecution of an action "without arguable probable cause." *Mglej v. Gardner*, 974 F.3d 1151, 1171 (10th Cir. 2020), *cert. denied* (2021) (quotation omitted). "Arguable probable cause" exists where an officer's conclusions rest on "objectively reasonable, even if mistaken, belief that probable cause exists." *Stonecipher*, 759 F.3d at 1141 (citation omitted).

Mr. Lehmann has adequately alleged Officer Zehner acted with malice for substantially the same reasons Mr. Lehmann alleged she arrested him without probable cause. As Mr. Lehmann argues, the cell phone footage contradicts the arrest affidavit's statements (ECF No. 9 at 19). Considering the Complaint's well-pleaded allegations and the cell phone footage, it is clear at this stage that there was no objectively reasonable basis for believing probable cause existed to arrest Mr. Lehmann. *See, e.g., Stonecipher*, 759 F.3d at 1146. Accordingly, Mr. Lehmann's malicious prosecution claim survives Officer Zehner's Motion to Dismiss.

## IV. Conclusion

Consistent with the above analysis, Officer Zehner's Motion to Dismiss (ECF No. 5) is DENIED.

DATED this 20th day of October 2022.

BY THE COURT:

Charlotte N. Sweeney
United States District Judge

13